MARK A. SAMUELS (S.B. #107026)
msamuels@omm.com
NICHOLAS J. WHILT (S.B. #247738)
nwhilt@omm.com
ALAN D. TSE (S.B. #266273)
atse@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071-2899
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

Attorneys for Plaintiffs Top Victory Electronics (Taiwan) Co., Ltd., TPV International (USA), Inc., TPV Electronics (Fujian) Co., Ltd., Top Victory Electronics (Fujian) Co., Ltd., and Envision Peripherals, Inc.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| TOP VICTORY ELECTRONICS (TAIWAN) CO., LTD., a Taiwanese corporation; TPV INTERNATIONAL (USA), INC., a California corporation; TPV ELECTRONICS (FUJIAN) CO., LTD., a Chinese corporation; TOP VICTORY ELECTRONICS (FUJIAN) CO., LTD., a Chinese corporation; and ENVISION PERIPHERALS, INC., a California corporation,<br><br>            Plaintiffs,<br><br>   v.<br><br>HITACHI, LTD., a Japanese corporation; INPRO LICENSING SÀRL, a Luxembourg SARL,<br><br>            Defendants. | Case No. CV 10-01579-CRB<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COMPLAINT**<br><br>[Supporting Declaration of Nicholas J. Whilt Filed Concurrently Herewith]<br><br>**Judge:** Hon. Charles R. Breyer<br>**Date:** September 24, 2010<br>**Time:** 10:00 a.m.<br>**Courtroom:** 8 |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ........................................................................................................... 1

II. SUMMARY OF FACTS AND ARGUMENT .................................................................. 2

III. ARGUMENT .................................................................................................................... 5

    A. Dismissal Is Unwarranted Because The Court Has Proper Subject Matter Jurisdiction Over This Declaratory Relief Case ....................................................... 5

        1. Hitachi's And Inpro's Threats Establish That TPV's Claims Arise From A Substantial And Immediate Controversy Between the Parties ................................................................................................. 6

        2. Hitachi Submitted Documents To The USPTO Admitting That It Was The "Sole" Owner Of The Patents-In-Suit When This Case Was Filed And Has Presented No Credible Evidence That Shows Otherwise ............................................................................................... 7

        3. Even If Hitachi Were Found to Have Assigned The Patents-In-Suit To Its Wholly Owned Subsidiary Before the Commencement of this Case, Hitachi Was and Remains Their Equitable Owner ................... 9

    B. Inpro Is Subject To Personal Jurisdiction In California ......................................... 12

        1. Inpro Is Subject To General Jurisdiction Because, Among Other Continuous And Systematic Contacts, It Maintains An Office And Director In California ................................................................................ 13

        2. Inpro is Subject to Specific Jurisdiction .................................................... 14

        3. The Court Should Either Outright Deny The Inpro's Motion To Dismiss Or Permit TPV To Take Jurisdictional Discovery ....................... 15

IV. CONCLUSION ............................................................................................................... 16

# TABLE OF AUTHORITIES

**Page**

### CASES

*Akro Corp. v. Luker*,
    45 F.3d 1541 (Fed. Cir. 1995) .................................................................................................. 15

*Arachnid v. Merit Indus.*,
    939 F.2d 1574 (Fed. Cir. 1991) .......................................................................................... 9, 10

*Campbell Pet Co. v. Miale*,
    542 F.3d 879 (Fed. Cir. 2008) .................................................................................................. 12

*Cargill, Inc. v. Sears Petroleum & Transp. Corp.*,
    388 F. Supp. 2d 37 (N.D.N.Y. 2005) ....................................................................................... 10

*Cat Tech LLC v. TubeMaster, Inc.*,
    528 F.3d 871 (Fed. Cir. 2008) .................................................................................................... 6

*eMag Solutions, LLC v. Toda Kogyo Corp.*,
    2006 U.S. Dist. LEXIS 94462 (N.D. Cal. Dec. 21, 2006) ....................................................... 16

*Enzo APA & Son, Inc. v. Geapag A.G.*,
    134 F.3d 1090 (Fed. Cir. 1998) ................................................................................................ 11

*Ferdik v. Bonzelet*,
    963 F.2d 1258 (9th Cir. 1992) .................................................................................................... 7

*Harris Rutsky & Co. Inc. Serv. v. Bell & Clements*,
    328 F.3d 1122 (9th Cir. 2003) .................................................................................................. 12

*Hitachi Consumer Electronics Co., Ltd., et al. v. Top Victory Electronics (Taiwan)
    Co. Ltd., et al.*,
    Civil Case No. 2:10-CV-260 ....................................................................................................... 2

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1946) .................................................................................................................. 13

*Martin v. D-Wave Systems Inc.*,
    2009 WL 4572742 (N.D. Cal. Dec. 1, 2009) ........................................................................... 13

*MedImmune, Inc. v. Genentech, Inc.*,
    549 U.S. 118 (2007) .................................................................................................................... 6

*Morrow v. Microsoft*,
    2004 WL 1781010 (N.D. Cal. Aug. 10, 2004) ......................................................................... 10

*Newmatic Sound Sys., Inc. v. Magnacoustics, Inc.*,
    2010 WL 1691862 (N.D. Cal. Apr. 23, 2010) .......................................................................... 11

*Patent Rights Protection Group, LLC v. Video Gaming Tech., Inc.*,
    603 F.3d 1364 (Fed. Cir. 2010) ................................................................................................ 15

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Perkins v. Benguet Consolidated Mining Co.*,
   342 U.S. 437 (1952) .................................................................................................. 13

*Pipe Liners, Inc. v. Am. Pipe & Plastics, Inc.*,
   893 F. Supp. 704 (S.D. Tex. 1995) ............................................................................. 9

*SanDisk Corp. v. STMicroelectronics, Inc.*,
   480 F.3d 1372 (Fed. Cir. 2007) .................................................................................. 7

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797 (9th Cir. 2004) ................... 13

*U.S. v. Cathcart*,
   2010 WL 1048829 (N.D. Cal. Feb. 12, 2010) .......................................................... 13

**RULES**

BLACK'S LAW DICTIONARY 1486 (6th ed. 1990) ............................................................ 9

DELLER'S WALKER ON PATENTS
   § 359 (2d ed. 1965.) .................................................................................................... 9

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(1) ...................................................................................................... 5

OPPOSITION TO MOTION TO DISMISS COMPLAINT

Plaintiffs Top Victory Electronics (Taiwan) Co., Ltd., TPV International (USA), Inc., TPV Electronics (Fujian) Co., Ltd., Top Victory Electronics (Fujian) Co., Ltd., and Envision Peripherals, Inc. (collectively, "TPV") respectfully submit the following brief in opposition to Defendants' Motion to Dismiss the Complaint, filed on August 6, 2010 (D.I. 19 ("Hitachi Br.")):

## I.     INTRODUCTION

This is an action for patent declaratory relief. Both at the time the case was commenced on April 14, 2010, and at the time the amended complaint was filed on April 27, 2010, the record owner of each of the eleven patents-in-suit[1] was defendant Hitachi, Ltd. ("Hitachi").

Not only was Hitachi at that time the ***record*** owner of each of the patents-in-suit according to the official public records of the U.S. Patent & Trademark Office (the "USPTO"), Hitachi was also their ***actual*** owner. This is shown most clearly by three Assignments recorded in the USPTO on May 28, 2010, each of them signed and dated by the General Manager of Hitachi's Intellectual Property Group, Mr. Kensuke Oka. The Assignments recite on their face that as of the date of their signing, May 25, 2010, Hitachi was "the sole owner" of ten of the patents-in-suit, and "the owner of an undivided one-half" interest in the eleventh. (Declaration of Nicholas J. Whilt, filed concurrently herewith ("Whilt Decl.") ¶¶ 5-7, Exs. 12-14.)

Hitachi's May 25, 2010 Assignment of its entire interest in all eleven of the patents-in-suit to its wholly-owned subsidiary, Hitachi Consumer Electronics, Ltd. ("HCE"), occurred two weeks after Hitachi's May 10, 2010 receipt of actual notice of the pendency of this case. (D.I. 27 (Declaration of Mark A. Samuels in Support of TPV's Motion to Enjoin Hitachi's Prosecution of Duplicative and Later-Filed Texas Action ("Samuels Decl.")), ¶¶ 6-8 and Exs. 10-12 thereto.) Under the circumstances, one might reasonably infer that Hitachi's sudden assignment of the patents to its subsidiary was motivated by a desire to evade this Court's jurisdiction and to defeat TPV's choice of forum. That is the only apparent explanation for Hitachi's next move, which was to file (through HCE) a mirror image patent infringement lawsuit against TPV in the Eastern

---

[1] The patents at issue in this case are U.S. Patent Nos. 5,502,497; 5,534,934; 5,828,417; 6,037,995; 6,185,228; 6,388,713; 6,549,243; 6,600,870; 6,693,966; 7,012,769; and 7,286,310, and are hereinafter referred to, collectively, as the "patents-in-suit."

CV 10-01579 CRB                                                                OPPOSITION TO MOTION TO DISMISS
                                                                                                          COMPLAINT

District of Texas, a forum having no conceivable connection to this dispute.[2]  And now, in completion of its scheme, Hitachi has moved to dismiss this case on the ground that it is no longer the owner of the patents-in-suit, and (in egregious contradiction of the May 25, 2010 Assignments it recorded in the USPTO) ***hasn't*** been their owner since "nearly a year before TPV filed the instant action." (Hitachi Br. at p. 4.)  As we will show, the motion is groundless and should be denied.

Separately, defendant Inpro Licensing SARL ("Inpro") has moved to dismiss for want of personal jurisdiction.  That motion, too, should be denied, or at the very least deferred pending discovery TPV will propose to conduct on the jurisdictional point.  Even were there some question on that point on the present record, there is ample evidence to suggest that Inpro is subject to this Court's *in personam* jurisdiction, and TPV expects discovery to so establish.

## II.   SUMMARY OF FACTS AND ARGUMENT

On April 14, 2010, TPV commenced this patent declaratory relief case against Hitachi,[3] and on April 27, 2010, TPV filed its amended complaint.  (D.I. 1, 7.)  Throughout that period, Hitachi was the record owner of all eleven of the patents-in-suit.  (Whilt Decl. ¶¶ 2-4, Exs. 1-11 (USPTO's Assignment Abstracts of Title for the patents-in-suit).)  On May 10, 2010, Hitachi received actual notice of this case through delivery of the Summons and First Amended Complaint.  (D.I. 27, Samuels Decl. ¶¶ 6-8, Exs. 10-12.)

Later that month, in an official filing with the USPTO, Hitachi confirmed that it was not only the *record* owner, but also the *actual* owner, of all eleven of the patents-in-suit at the time this case was commenced.  On May 28, 2010, Hitachi recorded Assignments dated May 25, 2010 of each of the patents-in-suit in the USPTO.  (Whilt Decl. ¶¶ 5-7, Exs. 12-14.)  The Assignments state on their face that, at the time of their execution on May 25, 2010, Hitachi was "the sole

---

[2] The Texas Action is styled *Hitachi Consumer Electronics Co., Ltd., et al. v. Top Victory Electronics (Taiwan) Co. Ltd., et al.*, Civil Case No. 2:10-CV-260.

[3] TPV also named as defendant Inpro Licensing SARL, a Luxembourg entity that describes itself as Hitachi's authorized licensing agent and is believed to hold some sort of unrecorded beneficial interest in the enforcement of the patents-in-suit.  (D.I. 7.)

| CV 10-01579 CRB | - 2 - | OPPOSITION TO MOTION TO DISMISS COMPLAINT |

1 owner" of ten of the patents-in-suit (*id.* ¶¶ 5-6, Exs. 12-13), and "the owner of an undivided one-half interest" in the eleventh (*id.* ¶ 7, Ex. 14). The Assignments go on to recite that, upon their execution, Hitachi "sold, assigned, transferred, and set over" its entire interest in the patents to its subsidiary, HCE. (*Id.* ¶¶ 5-7, Exs. 12-14.)

Having rid itself of its formal ownership interest in the patents-in-suit by stashing them all in its wholly-owned subsidiary, Hitachi (through HCE) then initiated its own mirror-image litigation against TPV in the Eastern District of Texas on July 22, 2010 (hereinafter, the "Texas Action").[4] In the Texas Action, HCE asserts infringement of eight patents, seven of which are already among the patents-in-suit before this Court. (*Compare* D.I. 7 ¶ 2 (Amended Complaint) *with* D.I. 27, Samuels Decl. ¶ 9, Ex. 13 (complaint in the Texas Action).) Because this case was commenced in this Court more than three months before the Texas Action was filed, it is entitled to priority under the familiar "first to file" rule. Accordingly, TPV has filed a motion seeking entry of an injunction against Hitachi's and its subsidiaries' prosecution of the Texas Action, which motion is currently pending before this Court. (D.I. 23.)

Defendants now seek dismissal of this litigation. Hitachi seeks dismissal on the ground that this Court lacks subject matter jurisdiction, and defendant Inpro seeks dismissal on the ground that it is not subject to this Court's *in personam* jurisdiction.

As for Hitachi's motion, it is a house of cards erected on the premise that Hitachi actually disposed of its ownership interest in the patents "nearly a year before TPV filed the instant action." (Hitachi Br. at p. 4.) Thus, Hitachi argues, at the time TPV commenced this case, no party holding any interest in the patents was named as defendant, and that defect cannot be cured by amendment. (*Id.* at p. 9.) As we will show, however, Hitachi is wrong on both prongs of its argument. In fact, Hitachi *did* own all eleven of the patents-in-suit at the time this case was filed, and that fact is confirmed both by the official records on file in the USPTO as well as Hitachi's

---

[4] Also named as plaintiff in the Texas Action is another of Hitachi's wholly-owned subsidiaries, Hitachi Advanced Digital, Inc. ("HAD"). (*See* D.I. 27, Samuels Decl. ¶ 9, Ex. 13.) HAD claims to be a co-owner with HCE of one of the patents at issue, U.S. Patent No. 6,388,713. (*Id.*) The Assignment of that particular patent, dated May 25, 2010 and recorded with the USPTO on May 28, 2010, recites that Hitachi was at that point the owner of "an undivided one-half right" in the patent, and then proceeds to transfer that interest to HCE. (Whilt Decl. ¶ 7, Ex. 14.)

1  clear statement in the Assignments themselves that it owned each of those patents as of May 25,
2  2010 -- well after the commencement of this case.  (Whilt Decl. ¶¶ 2-4, Exs. 1-11 (USPTO's
3  Assignment Abstracts of Title for the patents-in-suit); *id.* ¶¶ 5-7, Exs. 12-14 (Assignments).)

4  The "evidence" on which Hitachi relies to contradict its own recorded Assignments could
5  scarcely be more sketchy.  It consists entirely of the nearly incomprehensible statements of an
6  HCE official, Mr. Tesuro Yokoo, who testifies by declaration to a May 26, 2009 "Incorporation-
7  type Company Split Plan" (which he curiously neglects to provide the Court) which, by supposed
8  operation of Japanese law, ostensibly conveyed the patents to HCE and was somehow
9  "confirmed" by a "Recordable Confirmation of Assignment" dated more than a year after the
10 May 26, 2009 event it is said to "confirm."  (*See* D.I. 20, Ex. B, Declaration of Tesuro Yokoo
11 ("Yokoo Decl.") ¶¶ 5-10.)  Fortunately, the Court need not reach the question whether Hitachi's
12 evidence should be credited, for as we will show, it makes no difference anyway.  That is so
13 because the law is clear that even under Hitachi's scenario, the Court has subject matter
14 jurisdiction here since the named defendant -- Hitachi -- is undeniably the corporate parent of
15 HCE, and thus the equitable owner of the patents-in-suit with standing to assert their
16 infringement.

17 As for Inpro's motion, the facts belie its core assertion that it has "never been involved in
18 *any* licensing activities related to the patents-in-suit -- let alone any licensing activities directed at
19 California."  (Hitachi Br. at p. 12 (emphasis in original).)  Inpro's own Business Development
20 Director for the United States and Asia, Philip Cardman, is based in California.  (Whilt Decl. ¶ 8,
21 Ex. 15; ¶ 9, Ex. 16; ¶ 10, Ex. 17.)  Inpro's website and marketing materials also direct potential
22 partners to contact Cardman, who is "responsible for searching for and identifying opportunities
23 to acquire technology in the USA and Asia."  (Whilt Decl. ¶ 8, Ex. 15 (Inpro's website) at pp. 4,
24 7-8; *id*. ¶ 9, Ex. 16 (Inpro's Brochure) at pp. 9, 12-13.)

25 Cardman not only works for Inpro, but is also involved with another Inpro-related
26 company, an active California corporation by the name of Inpro IP Services, Inc. ("California
27 Inpro").  Cardman is the registered agent for California Inpro.  (Whilt Decl. ¶ 11, Ex. 19.)  In
28 addition, it is likely that Cardman is also an employee of California Inpro, as the registered

address of California Inpro is also Cardman's home office address. (*See* Whilt Decl. ¶ 10, Ex. 17; *id.* ¶ 11, Ex. 18.)

Moreover, and much as it tries to suggest otherwise, Inpro is hardly a bystander here with no connection to this dispute or to its California roots. Rather, it was Inpro, acting apparently as Hitachi's agent, that specifically targeted one of TPV's California subsidiaries, plaintiff Envision Peripherals, Inc. ("Envision"), with accusations of infringement of Hitachi's patents-in-suit. In March of 2010, after failing to convince TPV to license the patents-in-suit from Hitachi, Inpro sent TPV a set of claim charts which, on their face, purport to show how various of the patents-in-suit allegedly cover Envision's televisions. (Declaration of Charles Chen filed concurrently herewith ("Chen Decl.") ¶ 3, Ex. 2.) These circumstances establish, prima facie, the Court's *in personam* jurisdiction over Inpro and thus require denial of its motion.

### III. ARGUMENT

#### A. Dismissal Is Unwarranted Because The Court Has Proper Subject Matter Jurisdiction Over This Declaratory Relief Case.

Defendants have moved to dismiss TPV's Complaint under Fed. R. Civ. P. 12(b)(1) based on a purported lack of subject matter jurisdiction. The Court should deny defendants' motion for at least the following reasons.

***First***, the Court has subject matter jurisdiction over this declaratory judgment action because there is a substantial and immediate controversy between the parties. Defendants do not -- and cannot -- dispute that they accused TPV of infringing the patents-in-suit. Under the applicable legal standard, there is no doubt that this amounts to a justiciable case or controversy, and no argument is made to the contrary.

***Second***, defendants' motion turns entirely on the argument that Hitachi supposedly did not own the patents-in-suit at the time TPV filed this action. The facts, from Hitachi's own mouth, show otherwise. It is undisputed that *after* this case was filed, Hitachi recorded Assignments with the USPTO stating that it was at that time the owner of the patents-in-suit. Nevertheless, Hitachi

1  now suggests that these documents falsely identified itself as being the owner of the patents-in-
2  suit as of May 25, 2010 since it actually assigned the patents away some 10 months earlier.
3  (Hitachi Br. at p. 4, n.5.) Its only evidence, however, is a conclusory declaration that provides *no*
4  documentation evidencing an alleged earlier assignment by operation of Japanese law.

5  ***Finally***, even if one were to fully credit Hitachi's self-impeaching scenario, the supposed
6  pre-litigation assignment of the patents-in-suit to Hitachi's wholly-owned subsidiary, HCE,
7  would not defeat this Court's subject matter jurisdiction. The cases firmly establish that Hitachi
8  would nevertheless be regarded at all times as being the equitable owner of the patents-in-suit,
9  and this case would therefore be within this Court's subject matter jurisdiction.

11          1. **Hitachi's And Inpro's Threats Establish That TPV's Claims Arise**
12             **From A Substantial And Immediate Controversy Between the Parties.**

13  A federal court has subject matter jurisdiction over a declaratory relief action when the
14  circumstances demonstrate that "there is a substantial controversy, between parties having
15  adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a
16  declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (citations
17  omitted). Here, the totality of the circumstances establishes that a real dispute exists between
18  TPV and these defendants concerning alleged infringement of the patents-in-suit. *Cat Tech LLC*
19  *v. TubeMaster, Inc.*, 528 F.3d 871, 880 (Fed. Cir. 2008) (subject matter jurisdiction turns on the
20  "totality of [the] circumstances").

21  As demonstrated in the accompanying Declaration of Charles Chen, on August 23, 2009,
22  Mr. Michael Spiro, a representative of defendant Inpro, sent an unsolicited PowerPoint
23  presentation to TPV, bearing both Inpro's and Hitachi's names. (Chen Decl. ¶ 2, Ex. 1; D.I. 20,
24  Ex. C, Declaration of Michael Spiro ("Spiro Decl.") ¶ 2.) On its face, that presentation identifies
25  the patents-in-suit as belonging to Hitachi, and asserts them to be examples of Hitachi-held
26  patents that are "essential" to the manufacture of digital televisions, one of TPV's core
27  businesses. (Chen Decl. ¶ 2, Ex. 1 at p. 2.) A few days later, Mr. Spiro, together with attorney
28  Eddie Kling, an intellectual property litigation attorney with the same law firm now representing

1 Hitachi in this case, visited Mr. Chan in Taiwan and presented the PowerPoint material. (*Id.* ¶ 2.)
2 Thereafter, on March 20, 2010, Mr. Spiro sent Mr. Chen a set of claim charts which, on their face,
3 purport to show how certain of the patents-in-suit allegedly cover televisions sold by TPV's
4 California-based subsidiary, plaintiff Envision. (*Id.* ¶ 3, Ex. 2.)

The message from Inpro and Hitachi could not have been clearer: either acquiesce in
Hitachi's licensing demands, or else. Given Hitachi's and Inpro's allegations aimed at TPV's
importation and sale of televisions, TPV has unquestionably been placed "in the position of either
pursuing arguably illegal behavior or abandoning that which [it] claims a right to do." *SanDisk
Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1381 (Fed. Cir. 2007).

    2. **Hitachi Submitted Documents To The USPTO Admitting That It Was The "Sole" Owner Of The Patents-In-Suit When This Case Was Filed And Has Presented No Credible Evidence That Shows Otherwise.**

Hitachi does not argue that there is no actual case or controversy here, nor could it.
Instead, it argues that TPV's actual dispute is not with Hitachi, but with its subsidiary, HCE.
Claiming that it actually held *no* interest in any of the patents-in-suit at the time this case was
commenced, Hitachi argues, in turn, that the Court therefore lacks subject matter jurisdiction and
must dismiss the case. And anticipating that TPV might simply seek to join Hitachi's assignee-
subsidiaries as defendants by amendment, Hitachi claims that the supposed defect in subject
matter jurisdiction cannot be cured by amendment. (Hitachi Br. at p. 9.) Hitachi's arguments are
specious.

On April 14, 2010 and April 27, 2010, respectively, TPV filed its declaratory relief
complaint and amended complaint in this Court.[5] (D.I. 1, 7.) During this entire period, the
USPTO records reflected that Hitachi was the record owner of all eleven of the patents-in-suit,

---

[5] For reasons that are unclear, Hitachi attaches significance to the fact that certain patents raised in TPV's original Complaint, but not raised in its First Amended Complaint, are also at issue in a case filed by a third party, Mondis, in the Eastern District of Texas. (D.I. 19 at pp. 2-3 & n.3.) Whatever significance Hitachi may find in this circumstance, it is a red herring because it is fundamental that "an amended pleading supersedes the original pleading." *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992).

CV 10-01579 CRB     - 7 -     OPPOSITION TO MOTION TO DISMISS COMPLAINT

which was consistent with the assertions in the PowerPoint presentation Mr. Spiro sent to Mr. Chen and that he and attorney Kling later presented to TPV.  (Whilt Decl. ¶¶ 2-4, Exs. 1-11; Chen Decl. ¶ 2, Ex. 1.)  It was also consistent with the claim charts Mr. Spiro later provided, which bear the legends "Hitachi Confidential" and "© Hitachi, Ltd."  (Chen Decl. ¶ 3, Ex. 2.)

As discussed above, the *entire premise* of Hitachi's argument flatly contradicts the face of the Assignments it recorded in the USPTO on May 28, 2010.  In stark contrast to what Hitachi now tells the Court, those Assignments recite that Hitachi was, in fact, the "sole" owner of ten of the patents-in-suit, and co-owner of the eleventh, as of May 25, 2010.  (Whilt Decl. ¶¶ 5-7, Exs. 12-14.)  And, of course, because Hitachi was the owner of the patents-in-suit at the time this action was filed, it is unquestionably a proper party to these proceedings.  Thus, there is no subject matter jurisdiction issue before this Court, and dismissal is not warranted here.

Out of apparent desperation to avoid litigating before this Court, Hitachi contends that the documents it recorded with the USPTO contained false statements regarding the then-current ownership of the patents-in-suit.  (Hitachi Br. at p. 4, n.5.)

Hitachi's only evidence that it allegedly assigned away the patents before this case was filed is the unsupported and nearly incomprehensible statements of an HCE official, Mr. Yokoo.  (*See* Yokoo Decl. ¶¶ 5-10.)  Mr. Yokoo testifies in his declaration to a May 26, 2009 "Incorporation-type Company Split Plan" (which he omits to provide the Court) which, under the supposed operation of Japanese law, ostensibly conveyed the patents to HCE and is somehow "confirmed" by a "Recordable Confirmation of Assignment" that is dated more than a year after the May 26, 2009 event it is said to "confirm."  (*Id.*)  However, Hitachi has presented no documentary evidence of a written assignment of the patents-in-suit prior to the commencement of this case.  Instead, Mr. Yokoo simply asserts in conclusory fashion that such an "assignment" occurred by operation of Japanese law.

Based on the above, the evidence overwhelmingly shows that Hitachi owned the patents-in-suit when this case was filed.

### 3. Even If Hitachi Were Found to Have Assigned The Patents-In-Suit To Its Wholly Owned Subsidiary Before the Commencement of this Case, Hitachi Was and Remains Their Equitable Owner.

Fortunately, the Court need not reach the question whether Hitachi's evidence should be credited, for it makes no difference anyway. That is so because the law is clear that the Court nevertheless has subject matter jurisdiction here since the named defendant -- Hitachi -- is undeniably the corporate parent of HCE, and thus is the owner in equity of the patents-in-suit with standing to assert their infringement.

The Federal Circuit has declared that, where a plaintiff is the equitable title holder of a patent, "a federal district court has jurisdiction to consider claims for equitable relief stemming from the alleged infringement." *Arachnid v. Merit Indus.*, 939 F.2d 1574, 1580 (Fed. Cir. 1991). Courts have long recognized the concept of an equitable title holder, which confers standing in a patent infringement action seeking equitable remedies, such as an injunction to prevent further infringement or declaratory relief. *See Arachnid*, 939 F.2d at 1579-80; *Pipe Liners, Inc. v. Am. Pipe & Plastics, Inc.*, 893 F. Supp. 704, 706-07 (S.D. Tex. 1995). Hitachi unquestionably holds equitable title to the patents-in-suit.

*Pipe Liners* is directly on point. In *Pipe Liners*, defendants contended that Hydro Conduit's status as the patent owner's parent corporation was insufficient to confer standing to sue for patent infringement. *Pipe Liners*, 893 F. Supp. at 705-06. The Court disagreed, concluding that while Hydro Conduit did not own legal title to the patents in question, "it does own equitable title, which is defined as 'the beneficial interest of one person whom equity regards as the real owner, although the legal title is vested in another.'" *Id*. at 706 (citing BLACK'S LAW DICTIONARY 1486 (6th ed. 1990)). In finding that the corporate parent held equitable title to the patent actually owned by its subsidiary, the Court relied on the "well established . . . doctrine that *an equitable title to a patent accrues to a corporation in patents owned by its constituent corporation.*" *Id.* (citing DELLER'S WALKER ON PATENTS § 359 (2d ed. 1965.)) (emphasis added).

Upon determining that Hydro Conduit held equitable title to the patent, the Court recognized that it had sufficient standing to assert a patent infringement claim, citing Federal

CV 10-01579 CRB - 9 - OPPOSITION TO MOTION TO DISMISS COMPLAINT

1   Circuit law: "*It is also well established that "a federal court has jurisdiction to determine a*
2   *'claim for infringement,' asserted by an adjudged equitable title holder*, as a prerequisite to
3   awarding equitable relief for infringement." *Id*. (citing *Arachnid,* 939 F.2d at 1580) (emphasis
4   added). The *Pipe Liners* court thus correctly concluded that Hydro Conduit was entitled to the
5   equitable remedies of declaratory and injunctive relief if infringement were found.

6         The Court in *Cargill, Inc. v. Sears Petroleum & Transp. Corp*. applied similar reasoning
7   in concluding that a subsidiary corporation was an equitable title holder when its parent
8   corporation actually owned the patent at issue. *Cargill*, 388 F. Supp. 2d 37, 63 (N.D.N.Y. 2005).
9   The *Cargill* Court allowed SEACO, the wholly owned subsidiary of defendant Sears Petroleum,
10  "to participate in the pursuit of the patent infringement and to enjoy the benefit of the equitable
11  relief entered by the court, based upon the jury's finding of infringement." *Id*. The plaintiff
12  argued that SEACO should not have benefited from the jury's verdict on Sears' patent-related
13  counterclaim because it did not own the patent and thus lacked standing to sue. *Id*. The Court
14  disagreed, noting that the parent and subsidiary were "significantly intertwined" as corporate
15  entities which entitled the subsidiary to the equitable title of the patent. *Id*. The Court noted that
16  its decision was based on "the fact that equitable title to a patent has been recognized by the
17  Federal Circuit to exist in circumstances involving 'the beneficial interest of one person whom
18  equity regards as the real owner, although the legal title is vested in another.'" *Id*. (citing
19  *Arachnid*, 939 F.2d at 1578 n.3).

20        Courts have recognized relationships outside the parent-subsidiary context when making
21  an equitable title determination, as well. *See, e.g., Morrow v. Microsoft*, 2004 WL 1781010, at
22  \*4-5 (N.D. Cal. Aug. 10, 2004) (plaintiff was equitable title holder as successor in interest to the
23  patent owner); *Arachnid*, 939 F. Supp. at 1578-80 (plaintiff robbed of legal title to patent by
24  contractual fraud, but found to be the equitable title holder since it was the rightful owner of the
25  patent but for the fraudulent conduct). The key determination in these cases is the relationship
26  between the parties, and whether the putative equitable title holder truly has a proprietary interest
27  in the patent. *See Morrow*, 2004 WL 1781010, at \*5. The owners of the patents-in-suit, HCE and
28  HAD, are admittedly Hitachi's wholly-owned subsidiaries. (Yokoo Decl. ¶ 2.) The corporate

CV 10-01579 CRB      - 10 -      OPPOSITION TO MOTION TO DISMISS COMPLAINT

1 entities are closely intertwined by virtue of their parent/subsidiary relationship. Hitachi stands to
2 materially gain, or lose, as the substance of the patents-in-suit is examined by this Court. The
3 case law and the facts make abundantly clear that Hitachi is the equitable title holder to the
4 patents-in-suit.

5     This circumstance serves to readily distinguish both of the cases on which Hitachi relies.
6 *Newmatic Sound Sys., Inc. v. Magnacoustics, Inc*., 2010 WL 1691862 (N.D. Cal. Apr. 23, 2010),
7 was a declaratory relief case initially filed against a complete stranger to the patent,
8 Magnacoustics, which was merely "the company run by the [patent owner] but without ownership
9 rights" in it. *Id.* at *4. Because Magnacoustics was a stranger to the patent who for that reason
10 could not have pursued an affirmative infringement claim, Judge White concluded that "Plaintiff
11 lacked standing to assert the claims in the original complaint" and dismissed. *Id.* at *3-4.

12     Of course, the situation here is different. Unlike Magnacoustics, Hitachi is ***not*** a stranger
13 to the patent. To the contrary, *under Hitachi's own theory*, Hitachi was, at the time this case
14 began, the parent corporation of the patents' actual owner, HCE. As such, under the law
15 discussed above Hitachi has at all times been ***the equitable owner*** of the patents-in-suit, with the
16 right to sue for their infringement -- even while those patents were held by its wholly-owned
17 subsidiary, HCE.

18     Likewise unavailing to Hitachi is *Enzo APA & Son, Inc. v. Geapag A.G*., 134 F.3d 1090,
19 1093-94 (Fed. Cir. 1998), a four-page opinion that concluded, in the last half of its last sentence --
20 truly, as an afterthought -- that the court didn't have jurisdiction over the declaratory judgment
21 action brought by plaintiff in part because the defendant did not have standing to assert its patent
22 infringement counterclaim. *Enzo* is also readily distinguishable on the same basis as *Newmatic*
23 *Sound*. Defendant Geapag was not the equitable owner of the patent, as is Hitachi, and its only
24 connection to the patent was its status as a mere non-exclusive licensee. *Id*. at 1092-93. *Enzo*
25 thus stands, at most, for the unremarkable proposition that a mere non-exclusive licensee has no
26 standing to sue for infringement. It does not vitiate the principle that a parent corporation is the
27 equitable title holder, with standing to sue for infringement, with respect to its wholly-owned
28 subsidiaries' patents.

CV 10-01579 CRB      - 11 -      OPPOSITION TO MOTION TO DISMISS COMPLAINT

1   Thus, even fully crediting Hitachi's dubious evidence of a pre-litigation assignment of the
2   patents-in-suit from Hitachi to HCE, its argument that it would not have had standing to sue for
3   infringement at the time this case was commenced -- and thus this Court lacks subject matter
4   jurisdiction -- is simply wrong as a matter of law.

5   Although TPV vigorously contests Hitachi's convoluted assertion of an effective 2009
6   assignment of the patents-in-suit by reason of a Demerger Plan and the operation of Japanese law,
7   TPV does not dispute that, as a result of the May 25, 2010 Assignments recorded in the USPTO,
8   HCE has now become owner of the patents-in-suit. Accordingly, TPV acknowledges that HCE,
9   as well as HAD (which has apparently always held a fractional interest in one of the patents),
10  should be joined in this case if possible. To that end, TPV is filing, concurrently herewith, a
11  Motion for Leave to File its Second Amended Complaint. By that Motion, TPV seeks simply to
12  add HCE and HAD as defendants so that all interested parties are named parties in this litigation.
13  Hitachi, for its part, has at all times been, and remains today, a proper party to this lawsuit.
14  Accordingly, Hitachi's motion should be denied.

### B. Inpro Is Subject To Personal Jurisdiction In California

16  Inpro separately moves to dismiss on the ground that it is not subject to this Court's in
17  personam jurisdiction. Inpro's motion is without merit.

18  The Federal Circuit held that a Plaintiff "need[] only make a *prima facie* showing when
19  the district judge restricts her review of the Rule 12(b)(2) motion solely to affidavits and other
20  written evidence." *Campbell Pet Co. v. Miale*, 542 F.3d 879 (Fed. Cir. 2008) (internal quotations
21  omitted). That is the case here because discovery has not yet commenced. Thus, TPV "need only
22  demonstrate facts that if true would support jurisdiction over the defendant[s]." *Harris Rutsky &*
23  *Co. Inc. Serv. v. Bell & Clements*, 328 F.3d 1122, 1128-29 (9th Cir. 2003) (internal quotations
24  and citations omitted). Moreover, "conflicts between the facts contained in the parties' affidavits
25  must be resolved in plaintiff's favor." *Id.*

26  Personal jurisdiction over a non-resident defendant, such as Inpro, exists if the defendant
27  has either a continuous and systematic presence in the state (general jurisdiction), or minimum
28  contacts with the forum state such that the exercise of jurisdiction "does not offend traditional

notions of fair play and justice" (specific jurisdiction). *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1946). Here, the Court has both general and specific jurisdictions based on Inpro's activities and contacts with California.

### 1. **Inpro Is Subject To General Jurisdiction Because, Among Other Continuous And Systematic Contacts, It Maintains An Office And Director In California.**

Inpro's contacts here are sufficiently "continuous and systematic" to establish general personal jurisdiction. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984)).

Inpro's own website and promotional materials reveal that its Business Development Director for the United States and Asia, Mr. Phillip Cardman, is "[b]ased in California." (Whilt Decl. ¶ 8, Ex. 15 (Inpro's website) at pp. 4, 7-8; *id.* ¶ 9, Ex. 16 (Inpro Brochure) at pp. 9, 12-13; *id.* ¶ 10, Ex. 17 (California State Bar profile).) These same materials contain Inpro's admission that Mr. Cardman is "responsible for searching for and identifying opportunities to acquire technology in the USA and Asia." (*Id.* ¶ 8, Ex. 15 (Inpro's website) at pp. 4, 7-8; *id.* ¶ 9, Ex. 16 (Inpro Brochure) at pp. 9, 12-13.) The cases support the exercise of general jurisdiction based upon such activities. *See, e.g.*, *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 447-49 (1952) (general jurisdiction exists where the president of a Philippines-based corporation maintained an office in the forum state, had bank accounts in the forum state, and held several directors' meetings in the forum state); *U.S. v. Cathcart*, 2010 WL 1048829, at *3 (N.D. Cal. Feb. 12, 2010) (finding personal jurisdiction where defendant maintained an office in California); *Martin v. D-Wave Systems Inc.*, 2009 WL 4572742, at *4 (N.D. Cal. Dec. 1, 2009) (same). Mr. Cardman is also apparently the registered agent for an Inpro affiliate incorporated in California, Inpro IP Services, Inc. (Whilt Decl. ¶ 11, Ex. 18.) *See Martin*, 2009 WL 4572742, at *4 (finding personal jurisdiction where defendant "appointed an agent for service of process in California").

1  Moreover, Inpro is in the business of licensing intellectual property, including patents. (Whilt Decl. ¶ 8 Ex. 15 (Inpro's website) at pp. 1-3; *id*. ¶ 9, Ex. 16 (Inpro Brochure) at pp. 2-5.) And Inpro's website and promotional brochure establish that it licenses its patents to several California-based companies, such as Apple, Gateway, and Hewlett Packard. (*Id*. ¶ 8, Ex. 15 (Inpro's website) at p. 3; *id*. ¶ 9, Ex. 16 (Inpro Brochure) at p. 5.) This further establishes that Inpro maintains continuous contacts with California.

Based on the foregoing, Inpro has continuous and systematic contacts with California sufficient to establish general personal jurisdiction.

### 2. **Inpro is Subject to Specific Jurisdiction.**

Inpro's contacts also establish specific jurisdiction. Specific personal jurisdiction is established when "(1) the defendant purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to those activities, and (3) assertion of personal jurisdiction is reasonable and fair." *Autogenomics,* 566 F.3d at 1018. With respect to the last prong, the burden of proof is on the defendant, which must "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.*

In a declaratory judgment action involving patents, "enforcement or defense efforts related to the patent rather than the patentee's own commercialization efforts are to be considered for establishing specific personal jurisdiction in a declaratory judgment action against the patentee." *Id.* at 1020. That is certainly the case here. Inpro has purposely targeted TPV's subsidiaries incorporated in California, plaintiffs Envision and TPV International (USA), Inc. (D.I. 24, Declaration of Alec Chan in Support of Plaintiffs' Motion to Enjoin Hitachi's Prosecution of Texas Action ¶ 2 (certifying that plaintiff Envision is a California corporation headquartered in Fremont, CA); D.I. 25, Declaration of Alex Chao in Support of Plaintiffs' Motion to Enjoin Hitachi's Prosecution of Texas Action ¶ 2 (certifying that plaintiff TPV International (USA), Inc. is also a California corporation).) In particular, Inpro has acted as Hitachi's agent in attempting to license the patents-in-suit to TPV. (Chen Decl. ¶ 2, Ex. 1.) When the licensing efforts did not bear fruit from its perspective, Inpro delivered to TPV a set of patent claim charts allegedly showing how certain of the patents-in-suit read on Envision's

televisions.  (*Id.* ¶ 3, Ex. 2 at p. 2.)  Thus, Inpro has directed its specific enforcement activities at these California residents.

Inpro's preparation and transmittal of the patent claim charts constitutes an activity or step that goes beyond mere licensing negotiations and the transmittal of "warning letters," and establishes specific personal jurisdiction.  *See, e.g.*, *Akro Corp. v. Luker*, 45 F.3d 1541, 1543 (Fed. Cir. 1995); *Autogenomics*, 566 F.3d at 1019 ("we have held that in combination with cease-and-desist communications, other activities can give rise to specific personal jurisdiction").  TPV's claim for declaratory relief is *a direct result* of Inpro's conduct.

As for the last prong of the test, Inpro has provided no evidence showing that personal jurisdiction in California would be unfair.  *Autogenomics*, 566 F.3d at 1018.  Thus, Inpro is also subject to specific jurisdiction in California.

### 3. **The Court Should Either Outright Deny The Inpro's Motion To Dismiss Or Permit TPV To Take Jurisdictional Discovery.**

In the event that this Court is not convinced by TPV's showing that it has personal jurisdiction over Inpro, TPV respectfully requests that it be allowed to conduct discovery on the narrow issue of Inpro's contacts with California.  "In the Ninth Circuit, 'discovery should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of facts is necessary.'"  *Patent Rights Protection Group, LLC v. Video Gaming Tech., Inc.*, 603 F.3d 1364, 1371 (Fed. Cir. 2010) (quoting *Laub v. U.S. Dep't of the Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003)).  In fact, in the recent *Patent Rights Protection* case, the Federal Circuit found that a district court abused its discretion by denying plaintiff's request for jurisdictional discovery.  *Id.*

As demonstrated above, TPV believes it has established a *prima facie* case of both general and specific jurisdiction.  However, even without a *prima facie* showing, district courts have the discretion to allow jurisdictional discovery because "[i]t would . . . be counterintuitive to require a plaintiff, prior to conducting discovery, to meet the same burden that would be required to defeat a motion to dismiss."  *eMag Solutions, LLC v. Toda Kogyo Corp.*, 2006 WL 3783548, at

*2 (N.D. Cal. Dec. 21, 2006) (granting limited jurisdictional discovery on showing of some evidence of forum contacts) (citations omitted).

## IV. CONCLUSION

For all of the foregoing reasons, plaintiffs respectfully urge that Hitachi's motion to dismiss be denied, and Inpro's motion to dismiss be denied.

Dated: August 20, 2010

MARK A. SAMUELS
NICHOLAS J. WHILT
ALAN D. TSE
O'MELVENY & MYERS LLP

By: */s/ Mark A. Samuels*
    Mark A. Samuels
Attorneys for Plaintiffs Top Victory Electronics (Taiwan) Co., Ltd., TPV International (USA), Inc., TPV Electronics (Fujian) Co., Ltd., Top Victory Electronics (Fujian) Co., Ltd., and Envision Peripherals, Inc.

CV 10-01579 CRB — - 16 - — OPPOSITION TO MOTION TO DISMISS COMPLAINT